**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**COURT FILE NO.:**

| | |
|---|---|
| Clarita Muncal,<br><br>          Plaintiff,<br>v.<br><br>Wilshire Commercial Capital LLC d/b/a Wilshire Consumer Credit, and Westlake Services LLC d/b/a Westlake Financial Services,<br><br>          Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendants Wilshire Commercial Capital LLC d/b/a Wilshire Consumer Credit ("Defendant Wilshire") and Westlake Services LLC d/b/a Westlake Financial Services's ("Defendant Westlake")(collectively referred to as "Defendants") violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692, et seq. (hereinafter, "FDCPA") and the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 *et seq*.

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681 as the claims asserted present a federal question and has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct occurred in this District, Plaintiff resides in this District, and Defendants conducts business in this District. See *Ford Motor Co. vs. Montana Eighth Judicial District Court,* 2021 WL 1132515 (U.S. March 25, 2021).

**PARTIES**

4. Plaintiff, Clarita Muncal (hereinafter "Plaintiff"), is a natural person who resides in the City of Largo, County of Pinellas, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and Florida Statutes, Section 559.55(8).

5. Defendant Wilshire is a financial institution that conducts business in the State of Florida. Defendant Wilshire is a California limited liability company with its headquarters located at 4727 Wilshire Boulevard, Suite 100, Los Angeles, CA 90010. Defendant Wilshire has an agent of service of Corporate Creations Network Inc., 801 U.S. Highway 1, North Palm Beach, FL 334008. The defendant is a "person" as defined in 15 U.S.C. § 1681a(b) and Florida Statutes, Section 559.55(5), and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

6. Defendant Westlake is a financial institution that conducts business in the State of Florida. Defendant Westlake is a California limited liability company with its headquarters located at 4751 Wilshire Boulevard, Suite 100, Los Angeles, CA 90010. Defendant Westlake has an agent of service of Corporate Creations Network Inc., 801 U.S. Highway 1, North Palm Beach, FL 334008. The defendant is a "person" as defined in 15 U.S.C. § 1681a(b) and Florida Statutes, Section 559.55(5), and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

7. Defendant Wilshire is a wholly-owned subsidiary of Defendant Westlake.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

8. Consumer credit plays a significant role in the lives of American consumers entering the American marketplace and the economic system in general. Fair and accurate credit reporting is a gatekeeper to credit purchases, employment and income, essential commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

9. Congress investigated and determined that the banking system depends on fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

10. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

11. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record.

Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

12. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

13. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

14. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

15. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

16. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies,"

4

subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

17. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

18. Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

19. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

20. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on

credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

21. Metro II codes are used in an industry-based form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

22. The ACDVs have many fields in their bodies to facilitate thorough and complete communications between data furnishers and credit reporting agencies.

23. These ACDV "fields" have various titles for the many substantive areas where the Metro II codes can be entered.

## FCCPA AND FDCPA STATUTORY STRUCTURE

24. The FCCPA is a state consumer protection statute, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. Fla. Stat. §§ 559.55 and 559.72. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector— who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

25. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of

information regarding a debt *directly or indirectly* to any person *through any medium*" (emphasis added). 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2).

26. For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, or from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt. *See* 15 U.S.C. §§ 1692(d)-(e).

27. The FCCPA imposes liability on any creditor/person as well as any debt collector—who "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. Fla. Stat. § 559.72(9)."

## FACTUAL ALLEGATIONS

28. In February of 2022, Plaintiff incurred a financial obligation with Defendant. The loan was assigned account number ending in 8016.

29. Sometime in or about November 2022 Plaintiff hired DebtBlue, a company specializing in debt consolidation.

30. On July 12, 2023, Plaintiff contacted Defendant Wilshire and they agreed to settle Plaintiff's account ending in 8016 for a settlement amount of $2,599.05.

31. DebtBlue paid $2,599.05 to Defendant Wilshire on July 17, 2023 on Plaintiff's behalf.

32. Plaintiff's account ending in 8016 with Defendant Wilshire was settled in full on July 17, 2023. Plaintiff's account was therefore closed with a zero balance.

33. Despite Plaintiff's account with Defendant Wilshire being settled in full and closed with a zero balance, Plaintiff started receiving collection notices from Defendant Westlake.

34. Specifically, Plaintiff was contacted by Defendant Westlake in February of 2024, attempting to collect on the Defendant Wilshire account ending in 8016 as a debt collector.

35. Plaintiff immediately sent Defendant Westlake proof of the settlement payment and requested that Defendant Westlake cease collection.

36. Despite receiving proof of the payment on February 21, 2024, Defendant Westlake continued to harass Plaintiff with its illegal collection campaign.

37. Specifically, Defendant Westlake contacted Plaintiff repeatedly by telephone, attempting to collect on the settled Wilshire account.

38. Plaintiff received collection calls from Defendant Westlake on:

    May 8, 2024
    May 11, 2024
    May 18, 2024
    May 20, 2024
    June 3, 2024
    June 6, 2024
    June 10, 2024
    June 13, 2024
    June 16, 2024

39. During this time, Plaintiff made numerous telephone calls to Defendants disputing the debt and to have them stop the collection telephone calls and also to update the credit reporting tradeline on the Defendant Wilshire account ending in 8016.

40. Because the debt was previously settled, paid, and closed with a zero balance, Defendant Wilshire's repeated demands for payment violated 15 U.S.C. §§ 1692d, 1692e, 162e(5), 1692e(8), and 1692f.

41. Because Defendant Wilshire had placed Plaintiff's account ending in 8016 incorrectly into delinquent status it put a negative tradeline on Plaintiff's credit reports she suffered damages and defamatory and adverse/negative impact to her credit score and profile

42. Defendant Wilshire has repeatedly failed to update their reporting of the account at a minimum as disputed to the credit reporting agencies or suppressing any of the reporting of the account.

43. Despite numerous telephone calls and direct disputes being submitted to Defendants starting in February 2024, they did not take reasonable steps to investigate Plaintiff's claims of misconduct and failed to resolve or correct the erroneous and adverse credit reporting.

44. Plaintiff has spent numerous hours attempting to correct this egregious breach of fiduciary duty and credit reporting error by Defendant Wilshire costing her in excess of $900 in lost time calculated as $30 in hourly rate x 30 hours spent disputing and communicating with Defendants.

45. Finally after she had exhausted all attempts to communicate with Defendant directly, on or about July 10, 2024, Plaintiff submitted disputes to the national credit reporting agencies, Trans Union (hereinafter "Trans Union"), Equifax Information Services LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"),

pursuant to 15 U.S.C. § 1681i, stating, in relevant part, that the account identified was being misreported as having a balance and past due.

45. The credit reporting agencies identified above then communicated Plaintiff's disputes to Defendant in automated consumer dispute verification ("ACDV") forms, in accordance with 15 U.S.C. § 1681i(a)(2).

46. Despite Defendant Wilshire having internal records demonstrating its error, Defendant Wilshire intentionally and incorrectly confirmed for the credit reporting agencies that the account was past due and had a balance, in violation of 15 U.S.C. § 1681s-2(b).

47. By failing to reasonably investigate Plaintiff's dispute of furnishing inaccurate information regarding Plaintiff's account to the credit reporting agencies after Plaintiff had notified Defendant Wilshire of the inaccuracy, Defendant Wilshire also violated 15 U.S.C. § 1681s-2(b).

48. Defendant Wilshire failed to conduct a reasonable investigation into Plaintiff's July 2024 disputes, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to Trans Union, Equifax, and Experian that Plaintiff's alleged account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

49. Defendant Wilshire repeatedly and erroneously responded that Plaintiff's account had a balance and was past due.

50. Plaintiff has suffered extreme emotional distress, anxiety, depression, despair, loss of sleep, loss of time, nausea, headaches, and mental anguish, and still is adversely impacting her overall credit profile and her ability to obtain credit (i.e., her payment history).

51. Plaintiff has also incurred out-of-pocket loss because of Defendant's inaccurate credit reporting in the form of postage, loss of time spent communicating with Defendants in excess of 30 hours, and payment of attorney's fees and costs incurred.

## PLAINTIFF'S DAMAGES

43. As a result of Defendants' inaccurate furnishing/reporting and the harassing collection calls, Plaintiff has suffered out-of-pocket loss, reduced credit score and profile, emotional distress, frustration, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

44. Plaintiff is entitled to attorney's fees and costs from Defendant Wilshire pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

45. Plaintiff is entitled to attorney's fees and costs from Defendant Westlake pursuant to 15 U.S.C. § 1692k(a)(3)

46. The plaintiff is also entitled to statutory damages, actual damages, attorney's fees, and costs pursuant to Florida Statutes § 559.77.

## RESPONDEAT SUPERIOR LIABILITY

47. The acts and omissions of employees and other agents of Defendant Wilshire who communicated with Plaintiff and/or with the CRAs were committed within the time

11

and space limits of their agency relationship with their principal, Defendant Wilshire.

48. The acts and omissions by these agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Wilshire.

49. By committing these acts and omissions against Plaintiff, these agents were motivated to benefit their principal, Defendant Wilshire.

50. Defendant Wilshire is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents, including but not limited to violations of the FCRA.

## STANDING

51. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant; and

    c. and is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

52. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

*The "Injury in Fact" Prong*

53. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

54. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. In the present case, Defendant Wilshire's actions negatively impacted Plaintiff's credit.

55. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In the instant case, Plaintiff personally suffered worse credit and emotional distress.

*The "Traceable to the Conduct of Defendant's Prong*

56. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendant Wilshire.

57. In the instant case, this prong is met simply by the facts that the violative conduct contemplated in this Complaint was initiated by Defendant Wilshire directly, or by Defendant Wilshire's agents at the direction of Defendant Wilshire.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

58. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

59. In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. Congress set the damages and specifically redress the financial damages suffered by Plaintiff.

60. Furthermore, the award of monetary damages redress the injuries of the past and prevents further injury by Defendant Wilshire in the future.

61. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendant Wilshire on the stated claims.

## TRIAL BY JURY

62. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSE OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq*. – AGAINST DEFENDANT WILSHIRE

63. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. Defendant Wilshire violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

65. As a result of Defendant Wilshire's violations of the FCRA, Plaintiff has suffered actual damages not limited to the detriment of her credit rating, out-of-pocket loss,

emotional distress, embarrassment, mental anguish, and anxiety in an amount to be determined at trial.

66. Defendant Wilshire's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

67. Alternatively, Defendant Wilshire's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant Wilshire in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.

### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT –FLORIDA STATUTES § 559.55 *et seq*. – AGAINST BOTH DEFENDANTS

69. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70. Defendants are subject to and violated the provisions of Florida Statutes, Section 559.72(9), claiming or attempting to enforce a debt when such person knows that the debt is not legitimate.

71. Defendants attempted to collect amounts not owed as Plaintiff previously paid the account.

72. Defendant Wilshire agreed to settle the account, Plaintiff paid the settlement amount, and at all material times, Defendants were aware that Plaintiff had paid and settled the account.

73. Defendants still continued to report Plaintiff as delinquent on her credit report and continued debt collection efforts on payments that were not owed.

74. As a direct and proximate result of Defendants' actions, Plaintiff has endured emotional distress, actual damages, statutory damages, attorney's fees, and costs pursuant to Florida Statutes, Section 559.77.

## COUNT III.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692, *et seq.* – AGAINST DEFENDANT WESTLAKE SERVICES

75. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

76. Defendant Westlake's above-stated acts and omissions violate the FDCPA, including, but not limited to, each of the above-cited provisions of the FDCPA described in the paragraphs above, 11-13.

77. Defendant Westlake's violations have caused Plaintiff actual damages in the form of emotional distress and mental anguish.

78. As a result of Defendant Westlakes violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages, under 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs, according to 15 U.S.C. § 1692k(a)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- an award of actual and statutory damages against Defendant Wilshire for its violations of the FCRA and FCCPA pursuant to 15 U.S.C. §§ 1681n and 1681o and Fla. Stat. § 559.77;
- an award of punitive damages against Defendant Wilshire for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n and Fla. Stat. § 559.77;
- an award of costs and attorney's fees against Defendant Wilshire pursuant to 15 U.S.C. §§ 1681n and 1681o and Fla. Stat. § 559.77;
- an award of actual damages against Defendant Westlake, under 15 U.S.C. § 1692k(a)(1) and Fla. Stat. § 559.77;
- an award of statutory damages against Defendant Westlake under 15 U.S.C. § 1692k(a)(2)(A);
- an award of costs and reasonable attorney's fees against Defendant Westlake, under 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77; and
- such other and further relief as the Court may deem just and proper.

Dated this 27th day of February 2025.

Respectfully submitted,

*ATTORNEYS FOR PLAINTIFF*

By:/s/ *Young Kim*
Young Kim, Esq., FBN 122202
CONSUMER LAW ATTORNEYS CORP.
2727 Ulmerton Rd., Ste. 270
Clearwater, FL 33762
Phone: (877) 241-2200
ykim@consumerlawattorneys.com
federalservice@consumerlawattorneys.com

Carter B. Lyons, Esq.
MN Attorney I.D. #: 403655
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
carter@consumerjusticecenter.com
(*To Be Admitted Pro Hac Vice*)

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Clarita Muncal, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant, cause unnecessary delay to Defendant, or create a needless increase in the cost of litigation to Defendant named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

_____
Clarita Muncal